NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230026-U

NO. 4-23-0026

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 15, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* P.S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
| Petitioner-Appellee, | ) | No. 18JA122 |
| v. | ) | |
| Derek S., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | David A. Brown, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Steigmann and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding the circuit court's unfitness finding was
               not against the manifest weight of the evidence.

¶ 2         In July 2021, the State filed a petition to terminate the parental rights of respondent,

Derek S., as to his minor child, P.S. (born in April 2015). In September 2022, the circuit court

granted the State's petition and terminated respondent's parental rights. (P.S.'s mother's parental

rights were also terminated. However, she is not a party to this appeal.) Respondent appeals the

unfitness finding, arguing it is against the manifest weight of the evidence given the progress he

asserts he made in his required services. For the reasons that follow, we affirm.

¶ 3                                I. BACKGROUND

¶ 4         On July 3, 2018, the State filed a petition seeking the adjudication of the minor as

neglected under the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b)

(West 2018)). In particular, the State alleged the parents had ongoing domestic violence and substance abuse issues. On October 26, 2018, P.S.'s parents stipulated to the allegations in the petition. On January 3, 2019, the circuit court adjudicated the minor neglected due to being in an environment injurious to his welfare. In a separate dispositional order, the court adjudged the parents unfit to care for the minor for reasons other than financial circumstances alone, made him a ward of the court, and placed custody and guardianship with the Illinois Department of Children and Family Services (DCFS).

¶ 5        On July 19, 2021, the State filed a petition to terminate parental rights. The State alleged respondent was unfit for failing to make reasonable progress toward the return of the minor in the nine-month period following the adjudication of neglect spanning October 15, 2020, to July 15, 2021, pursuant to the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2020)).

¶ 6        On June 23, 2022, the circuit court commenced the hearing on the State's petition. We summarize the testimony as pertinent to the instant appeal.

¶ 7        Margaret Kelch, the caseworker and later the supervisor for the parents' case during the nine-month period at issue, testified regarding the array of services required for each parent. Such services included obtaining substance abuse assessments and undergoing any recommended treatment, parenting classes and individual counseling, and, as to respondent, anger management counseling. The court admitted the service plans dated January 25, 2021, and July 6, 2021, into evidence.

¶ 8        Kelch also testified regarding respondent's behavior during her interactions with him. In or around October or November 2020, Kelch referred the minor for counseling. While speaking with the mother on the phone about this, Kelch heard respondent in the background "screaming," "yelling," "cussing," and "calling [Kelch] obscene names," as well as calling Kelch

" 'sick' " for referring the minor to counseling. Respondent's behavior during that conversation prompted Kelch to reschedule a home visit. In November 2020, respondent commented about wanting to "take off" with the minor. Later, in early 2021, Kelch informed respondent that visits with the minor were being suspended on the recommendation of the minor's therapist, and respondent called Kelch an obscene name during that conversation. Kelch explained that while she could not be certain as to any recent incidents of domestic violence (though the mother appeared to have bruising on her arms and face when she attended an administrative case review meeting in January 2021), respondent was "screaming and yelling frequently" during his interactions with Kelch and even expressing threats on Facebook to take the minor. Respondent tested positive for marijuana nine times during this period, but the agency did not require him to undergo any additional substance abuse services.

¶ 9          Respondent testified to participating in a parenting class, substance abuse treatment, anger management, and domestic violence counseling. Anger management in particular "helped" him in "how to react to things." He denied any domestic violence during the nine-month period in question.

¶ 10          The State requested the circuit court find by clear and convincing evidence the parents did not make reasonable progress toward the return of the minor during this period. While the court previously ordered respondent to address domestic violence in his individual counseling, the notes from that service were "pretty vague in terms of what topics were actually discussed" such that progress on this issue could not be demonstrated; this was "quite important to a finding of reasonable progress" overall.

¶ 11          Respondent's counsel acknowledged the behavior with the caseworker but argued it "really [was] a [*sic*] discontent but nothing to suggest that there was exhibiting of anger

management [*sic*] towards the child." There was no police report regarding any violence towards either the mother or the minor. Respondent's counsel urged the circuit court to find the State had not met its burden of proving respondent's unfitness by clear and convincing evidence, arguing, "There's nothing to suggest that [respondent] was not *** actively involved and also making progress in his treatment or his therapy."

¶ 12     The guardian *ad litem* acknowledged respondent participated in more services than the mother but argued the focus should not be on "checking off boxes here." Instead, she maintained the circuit court should consider whether respondent had made "fundamental changes," which the guardian *ad litem* argued respondent had not, focusing on his ongoing anger issues.

¶ 13     In its September 15, 2022, ruling, the circuit court acknowledged respondent engaged in "a number of the services including parenting class" and a "drug and alcohol assessment where no treatment was recommended," even after he tested positive for marijuana nine times during this period. But the court was concerned about respondent's ongoing behavioral issues, noting that "while he did do anger management class, it still appeared that he had some struggles controlling his emotions and his behaviors," as manifested by incidents in which he "threatened to take [the minor] at one point in time" and "[w]as screaming and calling a caseworker obscene names and references." The court opined that "[w]hile [respondent] had done a number of things that were asked of him, we were never any closer to returning [the minor] to his care during that nine-month period of time," and it found "that the State has proven by clear and convincing evidence that [respondent] as well was unfit based upon the failure to make reasonable progress."

¶ 14     On December 8, 2022, the circuit court found it in the minor's best interests to terminate respondent's parental rights.

¶ 15    This appeal followed.

¶ 16                        II. ANALYSIS

¶ 17    Respondent argues the circuit court's unfitness finding is against the manifest weight of the evidence. Specifically, respondent contends he "either completed or made substantial progress towards the completion [of] his services during the relevant period." Respondent maintains his testimony regarding addressing domestic violence in his individual counseling is unrebutted by evidence showing otherwise, which the State had the burden to furnish. Respondent also takes issue with the court "unduly fixat[ing]" on his "perceived" emotional and behavioral problems.

¶ 18    We note respondent's appellate brief "seeks reversal of the [circuit] court's finding that [he] *** failed to make reasonable progress toward the return of the minor during the nine-month period of October 15, 2020 to July 15, 2021, and concomitant dispositional order of December 9, 2022, terminating [his] parental rights," but respondent grounds his appeal on the single issue of whether the unfitness finding is against the manifest weight of the evidence. Accordingly, we review only the court's unfitness finding.

¶ 19    Termination of parental rights under the Juvenile Court Act is a two-step process. *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16. Parental rights may not be terminated without the parent's consent unless the circuit court first determines, by clear and convincing evidence, the parent is unfit as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). Pursuant to section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2020)), a parent may be found unfit if he fails to "make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected *** minor." This court has defined "reasonable progress" as follows:

" 'Reasonable progress' is an objective standard which exists when the court, based on the evidence before it, can conclude that the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the near future, will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent will have fully complied with the directives previously given to the parent in order to regain custody of the child." (Emphases omitted.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991).

See *In re Ta. T.*, 2021 IL App (4th) 200658, ¶¶ 51, 55-57.

¶ 20   We will not disturb a finding of unfitness unless it is against the manifest weight of the evidence. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68. "A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding [citation], such that no reasonable person could arrive at the circuit court's finding on the basis of the evidence in the record [citation]." (Internal quotation marks omitted.) *Id.*

¶ 21   The State argues it presented clear and convincing evidence of respondent's failure to make reasonable progress during this period in that, "[a]lthough respondent completed the majority of classes, the caseworker testified that respondent never applied what he learned from anger management classes." In support of its position, the State refers to respondent's angry and obscene outbursts during his interactions with the caseworker and other agency personnel. We agree with the State.

¶ 22   While a parent shows effort by engaging in services, a parent fails to make reasonable progress if he does not implement the skills taught. See *In re R.L.*, 352 Ill. App. 3d 985,

999 (2004); see also *Ta. T.*, 2021 IL App (4th) 200658, ¶¶ 54-57 (finding a father who "fully complied with the service plan" failed to make reasonable progress because he continued to be involved in domestic violence incidents). "[T]here [is] a significant difference between going through the motions, checking off the boxes, and mechanically doing what is asked of the parent and actually changing the circumstances that brought the children into care." *Ta. T.*, 2021 IL App (4th) 200658, ¶ 56. "The point of requiring parents to attend classes and engage in services *** is so parents *apply* what they learn *** such that the court can be confident that the children will be safe in their care." (Emphasis in original.) *Id.*

¶ 23        Here, Kelch testified about respondent frequently manifesting explosive behaviors during the relevant nine-month period, including calling her obscene names, during interactions either on the phone or in person. On one occasion, respondent's behavior was such that Kelch had to reschedule a home visit. Respondent also made comments on Facebook threatening to take the minor. The circuit court found that notwithstanding respondent's participation in anger management counseling, "he had some struggles controlling his emotions and his behaviors," as manifested by incidents in which he "threatened to take [the minor] at one point in time" and "[w]as screaming and calling a caseworker obscene names and references." This is especially significant in that, as reflected in the service plans admitted at the unfitness hearing, respondent had engaged in anger management counseling in 2018, after the initiation of an intact case. (Respondent's counseling notes from Tazwood Mental Health Center likewise reflect respondent's *prior completion* of anger management services.) As the guardian *ad litem* observed, respondent seems to have been "checking off boxes" with respect to participating in his required services without truly developing the ability to manage his emotions and behaviors.

¶ 24        P.S. was removed from respondent's care because of domestic violence and substance abuse issues. One of the most important considerations in determining if a parent has made "reasonable progress" is whether the parent has corrected the conditions that led to the child being placed in the care of DCFS. See 750 ILCS 50/1(D)(m)(ii) (West 2020); see also *Ta. T.*, 2021 IL App (4th) 200658, ¶ 55. Respondent's continued anger management issues show he was not any closer to having P.S. returned to his care by July 2021 than he was in October 2020.

¶ 25        Based on the evidence presented, the circuit court's finding respondent was unfit for failing to make reasonable progress toward the return of P.S. during the relevant nine-month period was not against the manifest weight of the evidence.

¶ 26                                III. CONCLUSION

¶ 27        For the reasons stated, we affirm the circuit court's judgment.

¶ 28        Affirmed.